State v. Hickling.

---

### STATE v. WILLIAM HICKLING ET AL.

1. A conspiracy to slander a person by charging him with a criminal offence is indictable.
2. The statute, in requiring an overt act, does not require full execution of the conspiracy in order to make it punishable.

Indictment for conspiracy.

The gravamen charged was, that the defendants "fraudulently and unlawfully did conspire and agree between and among themselves, by means of divers false, wicked and malicious charges, to injure and defraud him, and to cause him to be regarded as a dishonest man and a thief."

The overt acts laid, in substance were that the defendants "reported to and among his neighbors that the said Dringer was a thief, and had dishonestly obtained certain brass, copper, &c., from, &c.; that they made false affidavits that said Dringer was a dishonest man, and had obtained fraudulently from the Erie company a large amount of copper, brass, &c., and other things fraudulently and in such a manner as to make it stealing by said Dringer from said company," &c.

The indictment having been brought before this court by *certiorari*, a motion was made to quash it.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the motion, *C. Parker*.

For the state, *A. B. Woodruff*.

The opinion of the court was delivered by

·BEASLEY, CHIEF JUSTICE. The principal objection to this indictment that was urged on the argument, is that, taking the pleading at its best, it alleges nothing more than a conspiracy to defame a person by the propagation of a slander; and it was insisted that the wrong thus charged was a civil injury, and not a criminal offence. But the rule of law thus assumed ·to exist is not only unsupported, so far as has been discovered, by any authority, but is opposed by several direct decisions, and is inconsistent with the general legal theory of the subject. The cases on this head heretofore settled by this court are, with respect to the legal principle underlying them, entirely at variance with the rule here contended for. *State* v. *Donaldson*, 3 *Vroom* 151 ; *State* v. *Cole*, 10 *Vroom* 324. Indeed, it may be said that a combination, formed with a view to cause a person to be suspected of having committed an indictable offence, is much nearer to the original ground upon which, in the old books, criminal prosecutions for conspiracy are based, than were the combinations in either of these reported cases. There are strong indications that originally the definition of conspiracy did not include anything more than confederacies to charge falsely a person with criminality. Thus Lord Coke describes the offence as " a consultation and agreement between two or more, to appeal or indict an innocent person falsely and maliciously, whom accordingly they cause to be indicted or appealed ; and afterwards the party is lawfully acquitted by the verdict of twelve men." Blackstone also seems to regard the offence to be confined to a malicious accusation. 4 *Black. Com.* 136. There are several cases in the Year Books that favor the same limitation. And, in fact, this species of indictment was the remedy for the same wrong, considered in its criminal aspect, for which an action for a malicious prosecution was the remedy, considered in its civil

aspect. It is much in this light that the subject is treated in Jacob's Law Dictionary, tit. " Conspiracy," and in *Hawk. P. C., b.* 1, *c.* 72, § 2. But the doctrine was soon expanded beyond this limit, and, among other cases, it was held that although no indictment had been found, or even though no complaint had been laid before a magistrate, and the only object appearing was to destroy the reputation of an individual, a prosecution for conspiracy could be maintained. This was the ruling by Lord Mansfield in the case of *Rex* v. *Parsons et al.,* 1 *Black. R.* 392, the facts in proof being that the defendants had conspired to take away the character of one Kempe, and accuse him of murder " by pretended conversations and communication with a ghost that conversed by knocking and scratching in a place called Cock Lane." The report of the case does not show that anything was done by the confederates beyond spreading reports defamatory of the person who was the object of their malice.

The present indictment is, I think, in the direct line of the precedents, as it is a slander imputing an indictable offence, the alleged endeavor of the confederates being to bring the prosecutor under the suspicion of having been guilty of theft. *Reg.* v. *Best et al., Salk.* 174; *Rex* v. *Kimberley et al.,* 1 *Levinz* 62; *Reg.* v. *Best,* 2 *Ld. Raym.* 1167.

In the brief of counsel of the defendant, I find the text book of Mr. Gabbett, (1 *Crim. Law* 252,) quoted and much relied upon. This author has reviewed this subject with evident care and acuteness, and it seems to me that his conclusions are in direct opposition to those that are necessary to sustain this defence. This is his ultimate deduction from the authorities. "Conspiracies," such is his language, "to injure or destroy the reputation of others have in several cases been held to be proper subjects of an indictment, and the fair result of these cases appears to be that the mere conspiracy to slander a man will not be sufficient, but there must be combined with it the imputation of a crime, by either the temporal or ecclesiastical courts, or else an intent by means of such false charges to extort money from the party."

State v. Hickling.

From this citation, it seems to me that it is manifest that, in the opinion of this ingenious writer, in order to bring a conspiracy to slander a person, *per se*, within the category of indictable offences, the slander designed to be propagated must be of a particular nature—that is, it must include the imputation of an offence punishable either by the temporal or spiritual courts.   As the object of the present confederacy was, as laid in the indictment, by means of "false, wicked and malicious charges" to cause the prosecutor to be regarded as a thief, it would seem that the present proceeding, by the test proposed, would be justified.   It is true that the counsel of the defendant, in his explication of this proposed rule, advances the view that it requires something more to make up an indictable conspiracy than a design to impute an indictable offence, such supposed super-addition being that the charge should be so specific as to jeopard the person slandered, by subjecting him to the risk of a criminal prosecution.   But this is an interpolation into the rule of a matter foreign to the text writer just quoted, as well as to the authorities, for it is not perceived that there is any indication to such a purpose in any of the decisions.

With respect to the objections to the mode of laying the overt acts, it suffices to say that they appear to spring out of the false theory that the office of such averments is to show a complete performance of the scheme of the conspirators. The statute does not exact that a full execution of the conspiracy shall be shown, the requirement being merely "that some act in execution of such agreement be done to effect the object thereof."   The consequence is, this indictment is not defective in this respect.

The motion to quash must be denied.